IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
AT PEORIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-20015 |
| | ) |
| NICOLE C. EASON, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR NEW TRIAL AND
MOTION FOR JUDGMENT OF ACQUITTAL**

Following a four day jury trial, Defendant, Nicole Eason, was convicted of two counts of attempting to kidnap a minor, in violation of 18 U.S.C. §§ 1201(a)(1), (d), and (g), and one count of causing a minor to be transported across state lines with the intent that the minor engage in prohibited sexual activity, in violation of 18 U.S.C. §§ 2423(a) and (e). The Defendant was represented at trial by Attorneys Elizabeth Pollock and Peter Henderson. She has now moved for a new trial on three grounds: (1) the Court erred in admitting improper evidence; (2) the failure to properly instruct the jury as to the elements of kidnapping was error that jeopardized Ms. Eason's substantial rights; and (3) the Government made improper closing arguments. Alternatively, Defendant seeks a judgment of acquittal. Each argument will be addressed in turn.[1]

---

[1] During the hearing on post-trial motions, both parties requested that the motions be resolved on the briefs without further argument.

DISCUSSION

**<u>Motion for Judgment of Acquittal</u>**

Following a guilty verdict, a Rule 29 motion for judgment of acquittal "faces a nearly insurmountable hurdle." *United States v. Howard*, 619 F.3d 723, 726 (7th Cir. 2010). The Court must consider the evidence "in the light most favorable to the government and will uphold the jury's verdict so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* The Court may not weigh the evidence or assess the credibility of witnesses. *Id.*

Defendant argues that she is entitled to judgment of acquittal on Counts 1 and 3 because the evidence, even viewed in the light most favorable to the government, fails to establish the crime of kidnapping. Specifically, she contends that the instant situation lacks the characteristics of true kidnappings and creates boundless liability by impermissibly expanding the narrow definition of interstate kidnappings that the federal statute was intended to punish. In support of this argument, Defendant cites *Chatwin v. United States*, 326 U.S. 455, 462-65 (1946), for the proposition that "the purpose of the Act was to outlaw interstate kidnappings rather than general transgressions or morality involving the crossing of state lines. And the broad language of the statute must be interpreted and applied with that plain fact in mind." *See also, Bond v. United States*, 134 S.Ct. 2077, 2086 (2014) (finding that Congress cannot punish felonies generally, as the police power belongs to the States, and federal criminal statutes must be narrowly construed to avoid intruding on the States' police power.)

Under the Federal Kidnapping Act, the Government must prove that: (1) the defendant knowingly and acting contrary to law, kidnapped, seized, confined, inveigled, decoyed, abducted, or carried away any person; and (2) held the person for ransom, reward, "or otherwise"

(to include any purpose or benefit); and; (3) (i) the person was willfully transported in interstate or foreign commerce; or (ii) the offender traveled in interstate or foreign commerce; or (iii) the offender uses the mail or any means, facility, or instrumentality of interstate of foreign commerce in committing or in furtherance of the commission of the offense. 18 U.S.C. § 1201. The Act was amended to extend federal jurisdiction over kidnappings for any reason, not limited to ransom and reward. *Gooch v. United States*, 297 U.S. 124, 128 (1936).

In this case, the Government proceeded on the theory that Defendant inveigled or fraudulently induced Minor Victim 1 and her adoptive parents to voluntarily transport her from California to Illinois for the purposes of "rehoming" her with the Defendant, and inveigled or fraudulently induced Minor Victim 2 and her adoptive parents to allow Defendant to transport her from Texas to Illinois for the purposes of "rehoming" her with the Defendant.  False representations included that Defendant had obtained a valid "home-study waiver" confirming their fitness to care for children, had experience working with children with behavior disorders, had a more favorable personal and financial background, had access to well-qualified doctors and counselors, and had successfully cared for other "rehomed" children.  The adoptive parents testified that they would not have transferred custody of the Minor Victims absent Defendant's false representations and deception.  During the process of inveigling the adoptive parents, the Government introduced evidence that the Minor Victims were also inveigled, lured, and deceived by false representations and promises that they would be well cared for and provided a nurturing environment with Defendant and her husband.  Based on this deception and inveiglement, Defendant gained control of the Minor Victims, who were then held for the sexual gratification of Defendant and her husband.

The Minor Victims were just that: frightened children, essentially abandoned by their adoptive parents, hundreds if not thousands of miles from home, knowing no one else, with no money or real access to uninhibited communication with their adoptive parents. Testimony revealed that Defendant was present when Minor Victim 1 spoke with her mother and stood over Minor Victim 2 while she sent an email to her mother; additionally, the cell phone Defendant provided to Minor Victim 2 to call home did not have any minutes on it. They were told that they were going to live with Defendant and had no real choice in the matter. To suggest that these children were free to leave at any time is contrary to both the factual circumstances and common sense.

When this and other evidence of record is viewed in the light most favorable to the Government, the Court finds that the Government established beyond a reasonable doubt that the Minor Victims and their adoptive parents were inveigled, decoyed, and/or carried away by Defendant's false representations and promises in order to gain control over or access to the Minor Victims. The record further supports a finding that the Minor Victims were seized, confined, held or carried away for a period of time until Defendant's deceit was revealed and measures were taken to retrieve the children. There is also no dispute that the Minor Victims purposefully traveled in interstate commerce based on Defendant's deception and false representations.

Defendant's position is not frivolous and, in fact, has some degree of appeal. This is not a traditional kidnapping situation and is further complicated by the fact that the minors are unable to legally consent on their own behalf, necessitating that any consent or change in control come from the adults in their lives. The record further demonstrated that Minor Victim 2 was returned to her adoptive father without incident, and Minor Victim 1 was allowed to leave as

soon as any demand for her return was made. There was also evidence presented at trial that the adoptive parents of Minor Victim 1 were so desperate to get rid of their adopted daughter that knowledge of the truth about Defendant would not have changed their decision to hand Minor Victim 1 over to her. The lack of common decency and parental concern displayed by these adoptive parents, who were not even honest with their child about what was happening, drove her half way across the country and left only 10 minutes after arriving, and without even verifying the suitability of the place where Minor Victim 1 was being left, was so obvious that criminal charges against these adoptive parents would be appropriate. That being said, this is only one conceivable view of the facts, and a rational trier of fact could have found the elements of the charges to have been established beyond a reasonable doubt. The Motion for Judgment of Acquittal is denied as to Counts 1 and 3.

Count 2 charged Defendant with causing Minor Victim 1 to be transported in interstate commerce with the intent that she engage in criminal sexual activity. The elements of this offense are: (1) that Defendant knowingly transported or caused Minor Victim 1 to be transported in interstate commerce; (2) that Minor Victim 1 was less than 18 years of age at the time; and (3) that Defendant intended Minor Victim 1 to engage in sexual activity, which if it had occurred, the Defendant or any other person identified in the indictment would have committed the criminal offense of Predatory Criminal Sexual Assault of a child. A defendant need not have actually engaged in criminal sexual activity to be convicted, guilt turns on the purpose motivating the transportation, not on its consummation. *Cleveland v. United States*, 329 U.S. 14, 20 (1946).

At trial, Minor Victim 1 testified that she was sexually assaulted by Defendant and her husband during her stay with them. This testimony was admittedly inconsistent with earlier

statements provided by Minor Victim 1, but this is not surprising or dispositive given that Minor Victim 1 was only 7-8 years old during her time with Defendant and was testifying approximately 7 years later.  The jury also heard testimony from the mother of Minor Victim 1 that she was upset when Defendant told her during a phone call that her husband was bathing Minor Victim 1, because she did not consider it appropriate for Calvin Eason to be bathing a 7 year-old girl.  Minor Victim 2 and another child placed in Defendant's care through the purported "rehoming" or "respite care" services confirmed that they were also exposed to adult pornography and expected to lay or sleep between the naked Easons.  Dr. Myra West provided expert testimony that exposing young children to adult pornography, buying them gifts or giving them other special treatment, and exposing them to sexual activity were elements of "grooming" behaviors.  When the above testimony is considered in the context of Defendant's lack of appropriate boundaries, tendency to sleep naked with the children, exposure of the children to pornography, and pattern of similar conduct with multiple children, a trier of fact could reasonably conclude that criminal sexual activity was at least one dominant purpose of obtaining Minor Victim 1.  The Motion for Judgment of Acquittal is also denied with respect to Count 2.

**Motion for New Trial**

Fed. R. Crim. P 33 provides that a judgment may be vacated and a new trial granted if the interest of justice so requires.  In determining whether a criminal defendant is entitled to a new trial, the "task is to determine whether the verdict is so contrary to the weight of evidence that a new trial is required." *United States v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011).  A new trial is also appropriate if there is "a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict." *United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006).  Although

the Court must make its own assessment of the evidence rather than viewing it in the light most favorable to the government, granting a new trial is reserved for "the most extreme cases," where the verdict is against the manifest weight of the evidence and would result in a miscarriage of justice or where an error occurred at trial that was not harmless. *United States v. Washington*, 184 F.3d 653, 657-58 (7th Cir. 1999); *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998).

Defendant first argues that the Court erred in admitting improper evidence, specifically testimony from Quita P., Ian D., and Dr. Myra West. She contends that the testimony of Quita P. and Ian D. was improper under Fed. R. Evid. 404(b) and unfairly prejudicial under Rule 403. However, for the reasons stated in denying Defendant's pretrial request to exclude this information, the evidence was properly offered and admissible for the purpose of establishing Defendant's motive, intent, common plan, and absence of mistake. The evidence, while undoubtedly prejudicial, was limited from a much larger pool of 404(b) evidence and was not such that its probative value was substantially outweighed by the danger of unfair prejudice or confusion. Defendant further objects to the testimony of Dr. West, as Dr. West opined that certain otherwise innocent behaviors could be considered grooming without engaging in any fact-specific analysis to opine on whether such behaviors were evidence of grooming in this case. However, Dr. West's testimony was relevant and helpful to the jury's understanding the evidence or determining facts in issue, namely whether Defendant's conduct indicated an intent that Minor Victim 1 engage in sexual activity.

The second claim of error is that the jury was improperly instructed on the elements of kidnapping. At trial, Defendant objected to using the term "person" instead of identifying the victims by name and failing to reduce the number of options by which the first element of

kidnapping could be committed to fit the facts of the case by eliminating the options that she kidnapped, seized, or confined any person. Defendant maintains that to eliminate confusion, the Court should have revised the instruction to refer to the taking of the Minor Victims and holding of the Minor Victims rather than referring to "any person" to make clear that the taking and holding refer to the same person. Absent such clarification, she asserts that the jury could improperly find the Defendant guilty if she inveigled one party and held another.

To succeed on this claim, Defendant must show: (1) that the instructions did not adequately state the law and (2) that the error was prejudicial to her because the jury was likely to be confused or misled. *United States v. White*, 443 F.3d 582, 587 (7th Cir. 2006). The Government is correct that the initial instructions adopted pattern kidnapping instructions from the Fifth and Eighth Circuits, which used the term "victim" to refer to who was inveigled and held. Defendant objected to this term as prejudicial and requested that the instructions track the language of the Act, which uses the term "person." It is unclear how referring to the children as Minor Victim 1 and Minor Victim 2, as now suggested, would have been any less prejudicial than the use of the term "victim" that drew Defendant's objection at trial. Nevertheless, the instruction tracks the language of the statute, and as such, is a correct statement of the law. The question then becomes whether the statement was adequate.

In the context of the trial as a whole, it is clear that Minor Victim 1 and Minor Victim 2 were the victims of the charged kidnapping. The jury was presented with the language of the Indictment, which unequivocally identified Minor Victims 1 and 2 as the persons who were kidnapped. The instructions also state that Count 1 charges Defendant with kidnapping Minor Victim 1 and Count 3 charges Defendant with kidnapping Minor Victim 2 before going on to list the elements of the offense. The fact that the victims' minority and consequent incapacity to

consent to the transfer of their own custody required Defendant to inveigle and direct her false representations not only at the minors, but also at their adoptive parents, does not somehow transform the adoptive parents into the victims of kidnapping. The evidence and argument at trial made clear that it was the Minor Victims who were carried away and held, whether by inveiglement, decoy, deception, trickery, or false representations by the Defendant. Thus, the instructions covered the elements of the offense and contained correct statements of the law. While the Court believes that the given instructions were adequate, in the event that reasonable minds disagree, the Court finds that when the instructions are viewed as a whole, there is no basis for finding that the jury did not understand the issues or any reasonable probability that the instructions in question had a prejudicial effect on the jury's verdict.

Finally, Defendant alleges that the Government made improper remarks during closing arguments, namely that Defendant inveigled the adoptive parents but then held the minors, that misrepresenting her identity in order to gain control of a child constitutes kidnapping, and that Defendant should be convicted to stop her from committing future bad acts. The Court must first determine whether the challenged remarks were improper and, if so, apply a multi-factor test to determine whether the remarks prejudiced the defendant. *United States v. Corley*, 519 F.3d 716, 727 (7th Cir. 2008). Factors to be considered include: (1) whether the evidence was misstated; (2) whether the remark implicated a specific right; (3) whether the response was invited by the defendant; (4) the efficacy of any curative instructions; (5) the defendant's opportunity to rebut the remarks; and (6) the weight of the evidence. *Id.* Defendant bears the burden of showing that it is "at least likely" that the remarks complained of affected the outcome of the trial. *United States v. Harris*, 271 F.3d 690, 699 (7th Cir. 2001).

The first argument is a running theme throughout these Motions and has been repeatedly addressed.  Suffice it to say the Court finds nothing improper about the argument that Defendant inveigled both the adoptive parents and Minor Victims in order to gain access to, carry away, or hold the Minor Victims.

The analogy that a person who misrepresents himself to be a doctor has kidnapped a child if he picks up that child but is not in fact a doctor is argued to leave out the second element of the offense, that is that the child be taken and held against his or her will.  The Court does not recall the analogy being so limited, and the transcript of the closing arguments reveals that the analogy in fact went on to indicate that the child gets in the car without his mother and is driven away; the obvious inference is that the doctor-impersonator drove away and did not take the child to the hospital as represented.  (Transcript of 12/17/15 Closing Arguments at 5-6) Moreover, the requirement that the victims must be carried away or held was repeatedly emphasized throughout the trial and jury instructions and was adequately supported by the evidence presented.  Defendant vigorously challenged the Government's proof on this issue both with witnesses and in closing argument, even directly addressing the legitimacy of this analogy.  When considered in the context of the entire record, the Court cannot find that the analogy made by the Government in the first part of closing arguments could reasonably have misled the jury or deprived Defendant of a fair trial.

Finally, Defendant takes issue with comments made during the rebuttal portion of closing argument where the Government "made an emotional appeal to the jury to convict" by "emphatically, and powerfully, urging the jury to find Ms. Eason guilty because only it could prevent her from doing this again."  Defendant cites *United States v. Severson*, 3 F.3d 1005, 1015 (7th Cir. 1993), and *United States v. DeSilva*, 505 F.3d 711, 718 (7th Cir. 2007), for the

proposition that such comments improperly invited the jury to consider issues beyond the guilt or innocence of Defendant and constituted an improper emotional appeal to the jury.

The relevant portion of the rebuttal argument involves an attempt to refute defense counsel's suggestion that the prosecution of her client amounted to a witch hunt.

> All you need to look at is the defendant's conduct. And in determining her intent and judging Poppy's credibility, think about how Poppy, Anna, Quita, how similar their experiences were in determining the defendant's intent. These girls had never met each other. They didn't compare stories. There is no evidence that there is this big conspiracy to get Nicole Eason. What you have evidence of is that the defendant does anything, says anything to take kids for her own sexual pleasure and she is not going to stop. Those are her words.
>
> Miss Hall, can we hear Government's Exhibit 12, clip two – three, I'm sorry. Clip three. Thank you.
>
> [Nicole Eason:      I will always be a mom until the day I die. And if I'm 80 years old and somebody comes knocking on my door, and says, "Please take care of my kid because I can't do it", I'm not going to say no.
>
> Interviewer:      Do you ever think about going through the more formal channels to get kids, either ...
>
> Nicole Eason:      Absolutely not.]
>
> You have the power right now, ladies and gentlemen, to stop Nicole Eason. Find her guilty.

(Transcript of 12/17/15 Closing Argument at 56-57)

The actual comment to which Defendant objects was brief and isolated, as well as directly responsive to Defendant's statement during the recorded interview that she had no intention of obtaining children through the formal process and would continue to take children offered to her until the day she died. Even assuming *arguendo* that the comment that the jurors

11

had the power to stop her was improper, any error was harmless and did not deprive Defendant of due process or a fair trial. Given the record as a whole, the verdict was not contrary to the evidence, and there is no reasonable probability that the results of the proceeding would have been different in the absence of the comment. Defendant has failed to demonstrate that she is entitled to the relief requested, and her Motion for New Trial is denied.

## CONCLUSION

For the reasons set forth above, Defendant's Motion for Judgment of Acquittal [105] and Motion for New Trial [106] are DENIED.

ENTERED this 22nd day of June, 2016.

                                                                             s/ James E. Shadid
                                                                             James E. Shadid
                                                                             Chief U.S. District Judge